IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| YURI ALISHAEV, ABRAHAM JEREMIAS, AND MORRIS JEREMIAS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>JPMORGAN CHASE & CO., JOHN EDMONDS, MICHAEL THOMAS NOWAK, ROBERT GOTTLIEB, and JOHN DOE Nos. 1-18,<br><br>Defendants, | Case No. _____<br><br><br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Yuri Alishaev, Abraham Jeremias, and Morris Jeremias ("Plaintiffs"), individually and on behalf of all others similarly situated, by their undersigned attorneys, allege the following upon personal knowledge as to their own acts, and upon information and belief as to all other matters, after the investigation conducted by and through Plaintiffs' attorneys, including a review of the Information and Plea Agreement filed in *U.S. v. Edmonds*, No. 3:18-cr-00239 (D. Conn.) (a copy of which is attached hereto as Exhibit A), and other reports relating thereto, against Defendants JPMorgan Chase & Co. ("JPM"), John Edmonds ("Edmonds"), a former JPM precious metals trader who has pled guilty to commodities fraud and conspiracy to commit wire fraud, Michael Thomas Nowak ("Nowak"), JPM's Managing Director of precious metals trading and Edmonds' direct superior, Robert Gottlieb ("Gottlieb"), a former Managing Director of precious metals trading at JPM and a former superior and mentor of Edmonds, and John Does 1-18 (collectively, "Defendants"). Plaintiffs believe that substantial additional evidentiary support will exist for the allegations set forth herein after discovery.

## NATURE OF THE COMPLAINT

1.  This case stems from Defendants' unlawful and intentional manipulation of pricing for precious metals futures contracts on the commodities markets through "spoofing," *i.e.*, the illegal practice of "bidding or offering with the intent to cancel the bid or offer before execution," gold and silver futures contracts on the Commodity Exchange, Inc. ("COMEX"), and palladium and platinum futures contracts on the New York Mercantile Exchange ("NYMEX"), as well as options on these futures contracts, during the period of October 9, 2009, through at least December 31, 2015 (the "Class Period").

2.  During the Class Period, Defendants routinely engaged in multiple fraudulent transactions on the NYMEX and COMEX, which were cancelled before execution, but which deceived Plaintiffs and the Class members to trade at prices that were unlawfully manipulated by Defendants.

3.  Defendants made the false appearance of supply and demand on the metals future markets, moving futures and options contracts in such a way as to benefit Defendants, but to harm Plaintiffs and the Class.

4.  On October 9, 2018, Defendant Edmonds pled guilty to two counts of conspiracy to commit wire fraud, commodities fraud, commodities price manipulation, and spoofing, which unlawful conduct was deployed hundreds of times, with the knowledge and consent of his superiors, including but not limited to Defendant Nowak, and was designed to, and did, artificially move the price of precious metals futures contracts in a direction that was favorable to Defendants, but detrimental to other market participants, including Plaintiff and the Class. *See* Exhibit A.

5. Through this action, Plaintiffs seek to recover damages on behalf of themselves and the Class caused by Defendants' illegal conduct.

## PARTIES

6. Plaintiff Yuri Alishaev is a citizen of Monsey, New York. He transacted in COMEX and NYMEX gold, silver, platinum, and palladium futures contracts at artificially inflated prices proximately caused by Defendants' conduct throughout the Class Period.

7. Plaintiff Abraham Jeremias is a citizen of Brooklyn, New York. He transacted in COMEX and NYMEX gold, silver, platinum, and palladium futures contracts at artificially inflated prices proximately caused by Defendants' conduct throughout the Class Period.

8. Plaintiff Morris Jeremias is a citizen of Brooklyn, New York. He transacted in COMEX and NYMEX gold, silver, platinum, and palladium futures contracts at artificially inflated prices proximately caused by Defendants' conduct throughout the Class Period.

9. Defendant JPM is a financial services company and investment bank whose principal place of business is 270 Park Avenue, New York, New York, 10007. JPM offers investment banking services to individuals, institutions, and businesses throughout the world. Throughout the class period, JPM employed Defendants Edmonds, Nowak and John Does 1-18 as precious metals traders.

10. Defendant Edmonds resides in Brooklyn, New York. Edmonds has pled guilty to conspiracy to commit fraud, in violation of 18 U.S.C. § 1348(1); commodities price manipulation, in violation of 7 U.S.C. § 13(a)(2) ; spoofing, in violation of U.S.C. §§ 6(c)(a)(5)(C) and 13(a)(2); and commodities fraud, in violation of 18 U.S.C. § 1348(1).

11. Defendant Nowak is a resident of New Jersey, and was at all times relevant, JPM's Managing Director of precious metals trading and Edmonds' direct superior. He engaged in, facilitated, and assisted with the manipulation, and unlawful conduct alleged herein.

12. Defendant Robert Gottlieb is head of precious metals at Koch Supply and Trading LP, was at all times relevant a former Managing Director of precious metals trading at JPM and a former superior and mentor of Edmonds. He engaged in, facilitated, and assisted with the manipulation, and unlawful conduct alleged herein.

13. Defendants John Does 1-18 were employees of JPM during the Class Period whose identities are as yet unknown to Plaintiffs. However, these Defendants, both unknown and known to the United States Attorney, are alleged to have engaged in, facilitated, and assisted with the manipulation, and unlawful conduct alleged herein.

14. Defendants were the actual and proximate causes of the unlawful acts and practices complained of herein. Further, each Defendant, both directly and indirectly, made use of the means and instrumentalities of transportation or communication in, or the instrumentalities of commerce, or of the mails in connection with the unlawful acts and practices and course of business upon which Plaintiffs' claims are based.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over Plaintiffs' claims under 28 U.S.C. §§ 1331, 1337, and Section 22 of the Commodities Exchange Act, 7 U.S.C. § 25.

16. Venue is proper in the Southern District of New York, pursuant to Section 22 (c) of the Commodities Exchange Act ("CEA"), 7 U.S.C. § 25(c), and 28 U.S.C. § 1391(b), (c), and (d), as a significant portion of the misconduct giving rise to this complaint occurred herein. One or more of the Plaintiffs and Defendants resides, transacts business, is found, or has agents in this

district, and a substantial part of the events giving rise to Plaintiffs' claims arose in this district. Defendant's conduct also had a substantial effect on interstate commerce, including in this District. This Court also has jurisdiction over the state law claims under 28 U.S.C. § 1367 because those claims are so related to the federal claim that they form part of the same case or controversy.

## FACTUAL BACKGROUND

**The Market**

17. A precious metals futures contract creates the obligation to make (a short contract) or take (a long contract) "delivery" of a commodity at some time in the future. These transactions are governed by Section 5 of the CEA, 7 U.S.C. § 7, which specifies the terms for each of the futures contracts listed, including the underlying commodity, trading units, price quotation, trading hours, trading months, minimum and maximum price fluctuation, and margin requirements for futures trading of gold, silver, platinum, or palladium, respectively, on which a futures contract is based.

18. An options contract is an agreement that gives the buyer, or "option holder," the right, but not the obligation, to buy or sell a commodity at a specified price during a specified time period. The buyer of an option pays an "option premium" to the seller for the right to buy ("call") or sell ("put") the underlying commodity (in this case, precious metals futures contracts).

19. A "strike price" is the price at which a buyer has the "call option," but not obligation to buy a certain commodity. The seller is obligated to sell at the "strike price."

20. A seller has the right, but not obligation, to sell a commodity at a given strike price, thereby obligating the seller to buy at the strike price if a "put option" is exercised. A put option buyer, absent any offsetting hedges, wants the value of the underlying commodity to decrease so that he or she can sell the commodity at a price above market value. However, the

seller wants the price of the asset to stay above the strike price so that the seller would not be forced to buy the underlying futures at above-market prices.

21. The COMEX and NYMEX are commodities exchanges operated by the Chicago Mercantile Exchange Group Inc. ("the CME"). NYMEX and COMEX sell options on futures contracts, which allow market participants to trade on these contracts rather than on the commodities themselves.

22. The CME Rulebook specifies the conditions for trading on the NYMEX and COMEX. Participants who violate a Rule may be restricted, suspended or terminated from any platform controlled by the CME Group, or lose their right to supervise the entry of any order in CME Group platforms.[1]

23. The contract for delivery on COMEX gold futures contracts is one hundred troy ounces of gold. Gold futures contracts trade on the CME Globex platform, and are subject to Chapter 113 of the COMEX rulebook.[2]

24. A COMEX silver futures contract has an underlying commodity of 5,000 troy ounces. COMEX silver futures contracts trade on CME Globex as laid out in Chapter 112 of the COMEX rulebook.[3]

25. The contract for delivery on NYMEX palladium futures is one hundred troy ounces. Palladium futures trade on the CME Globex platform, pursuant to Chapter 106 of the NYMEX rulebook.[4]

---

[1] NYMEX Rule 402.B(6).

[2] Https://www.cmegroup.com/content/dam/cmegroup/rulebook/COMEX/1a/113.pdf.

[3] Https://www.cmegroup.com/rulebook/COMEX/1a/112.pdf.

[4] Https://www.cmegroup.com/rulebook/NYMEX/1a/106.pdf.

26.     The contract for delivery on NYMEX platinum futures contracts is 50 troy ounces. Platinum futures trade on CME Globex and are subject to Rule 105 of the NYMEX rulebook.[5]

**Spoofing**

27.     When a precious metal futures trader places bids offering to buy or sell gold, silver, platinum or palladium futures contracts with the intent to cancel prior to execution, this creates a fraud on market participants known as "spoofing," prohibited by section 747 of the Dodd-Frank Wall Street Reform and Consumer Protection Act (the "Dodd-Frank Act"), as amended, codified at 7 U.S.C. § 6c(a)(5), and CFE Rule 620 promulgated thereunder.

28.     This spoofing strategy is "intended to, and did, transmit materially false and misleading liquidity and price information and otherwise deceive other market participants about the existence of supply and demand for the futures contracts at issue, and thus induce those other market participants to trade against orders that the defendant and his co-conspirators placed and did want to execute on the opposite side of the market from the Spoof Orders at prices, quantities, and times that the other market participants otherwise would not have traded." Exhibit A at 10.

29.     For example, when a trader places an order with no intention to execute it, he or she has placed a "trick order." A trader might place a trick buy order on a commodity to create the impression of increased demand, thus increasing price, and allowing the trader to sell his position at an artificially inflated price. A trader might place a trick sell order on a commodity to create the impression that there is over-supply in the market, thus decreasing prices and allowing the trader to buy at an artificially deflated price.

---

[5] Https://www.cmegroup.com/rulebook/NYMEX/1a/105.pdf.

30. Often, in furtherance of a spoofing conspiracy, traders place numerous simultaneous orders on both the buy and sell side of a commodity, one set of which – the "spoof" orders – they intend to cancel and the opposite set they intend to execute at prices artificially changed to their benefit, but to the detriment of other persons transacting contrary to the spoof orders. When, for example, traders seek to lower the price of a commodity future in order to purchase it at a cheaper price, they place numerous sell orders at consistently lower prices in order to artificially lower the price of that commodity. The traders then execute their genuine buy orders while simultaneously canceling their spoof sell orders.

31. Traders engaging in spoofing, like the Defendants, put themselves on both sides of a transaction by placing "genuine orders" – real orders intended to be executed – based on the inflated or deflated price created by an outstanding trick order. These "genuine orders" are generally placed in a much lower quantity.

32. By reason of Defendants' spoofing, Plaintiffs and the Class were induced to buy or sell at prices, quantities and times they would otherwise have not.

33. Throughout the Class Period, Defendants intended to and did transmit materially false and misleading liquidity and price information and manipulated the precious metals futures markets and options on those futures contracts to deceive other market participants and unjustly enrich themselves, thereby causing losses to Plaintiffs and the Class.

## SUBSTANTIVE ALLEGATIONS

34. Throughout the Class Period, Defendants directed and/or placed numerous electronic orders to buy and sell precious metals futures contracts with the intent to cancel those orders before execution. Edmonds, Nowak, Gottlieb and John Does 1-18 made at least hundreds of such "spoof orders" in order to profit or avoid losses for themselves and JPM. This strategy

was part of a conspiracy between JPM, Defendants Edmonds, Nowak, Gottlieb, and other JPM traders. In fact, this strategy was taught to Edmonds and to other JPM traders under the direction of Nowak and Gottlieb.

35. The wide-ranging scheme to defraud investors operated from computers at JPM's offices in New York, where Edmonds, Nowak, Gottlieb and Defendants John Does 1-18, with the knowledge and consent of their immediate superiors, routinely placed spoof orders on the NYMEX and COMEX. These spoof orders were transmitted via interstate commerce to Plaintiffs and the Class.

36. During the Class Period, Plaintiffs and the Class entered into futures contracts and options on futures contracts, the prices of which were deliberately manipulated by Defendants. Plaintiffs and the Class were damaged thereby. At all times, Defendants created a false sense of supply and demand to get Plaintiffs and the Class to trade at manipulated prices which would enrich Defendants who were on the other side of the transaction.

37. Each spoofing incident allowed Defendants to buy at below market prices or sell at prices higher than the prices would have been but for Defendants' spoofing. Plaintiffs and the Class could not have discovered Defendants' scheme because of its inherently covert nature. Nor could any reasonable due diligence have enabled Plaintiffs and the Class to uncover the secret inner workings of JPM and its traders.

38. For instance, Edmonds placed a spoof order to sell 402 silver futures contracts on or about October 12, 2012, for a price of $33.610. This spoof trade was intended to and did induce a COMEX trader to rely on this false information to sell a single silver futures contract for the sum of $33.585 on October 12, 2012. *See* Exhibit A.

39. The wide-ranging and long-running fraud on participants in the precious metals commodities markets orchestrated by JPM, Defendant Edmonds, Nowak, Gottlieb and John Does 1-18 was conducted while they were employed by JPM and was within the course of their employment.

40. Each Defendant ratified, approved, joined in, acquiesced, or authorized each other's wrongdoing, and benefited from their misconduct. Every Defendant acted in a manner to profit from a fraud on the precious metals commodities exchanges to the detriment of market participants, such as Plaintiffs and the Class. At all relevant times, Defendants committed the acts alleged herein in a knowing and purposeful manner to achieve the results stated.

41. On October 9, 2018, Edmonds entered into a Plea Agreement with the Department of Justice ("DOJ"). In the Plea Agreement, Defendant Edmonds admitted that his actions constituted knowingly, willfully, and voluntarily being a member of, or a participant in a conspiracy and that he or one of his co-conspirators committed an overt act in an effort to further the purpose of the conspiracy.

42. Defendant Edmonds acknowledged in the Plea Agreement that his actions met the elements of commodities fraud. He executed or attempted to execute a scheme or artifice to defraud in connection with a commodity for future delivery, or an option on a commodity or future delivery. Finally, Defendant Edmonds did so knowingly and with intent to defraud. *See* Exhibit A.

43. Edmonds pleaded guilty to conspiracy to commit wire fraud, commodities fraud, commodities price manipulation, and spoofing. As part of his Plea Agreement, he agreed to be suspended as a trader and market participant for five years (or such longer period of time as determined by the Commodity Futures Trading Commission ("CFTC")). *See* Exhibit A.

44. The DOJ investigation is ongoing. To the extent Defendants seek to defend themselves on the alleged untimeliness of the claims asserted, such an argument is invalid because of the covert nature of their scheme, as set forth above.

## CLASS ACTION ALLEGATIONS

45. Plaintiffs bring this class action on behalf of all persons who traded precious metals futures contracts or any options on those futures contract, on the NYMEX or the COMEX, during the Class Period (the "Class"). Excluded from the Class are Defendants, the officers and directors and affiliates of Defendants, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

46. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiffs at this time, and can only be ascertained through appropriate discovery, Plaintiffs believe that there are hundreds, potentially thousands, of members in the proposed Class.

47. Plaintiffs' claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of law.

48. Plaintiffs will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action litigation.

49. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

    a. Whether Defendants manipulated the price for precious metals futures contracts, or the price of options on those futures contracts, in violation of the CEA;

b. Whether Defendants manipulated the price for precious metals futures contracts, or the price of options on those futures contracts, in violation of NY GBL § 349;

c. Whether Defendants' unlawful conduct damaged Plaintiffs and the Class;

d. Whether Defendants, through their unlawful conduct, unjustly enriched themselves to the detriment of Plaintiffs and members of the Class; and

e. The time period and extent of Defendants' unlawful conduct.

50. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small compared to the expense and burden of individual litigation, it is practically impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

**FIRST CLAIM FOR RELIEF**
**Manipulation in Violation of the CEA**
**7 U.S.C. §§ 1, *et seq.***
**(As Against All Defendants)**

51. Plaintiffs re-allege and incorporate the preceding allegations with the same force and effect as if fully restated herein.

52. Throughout the Class Period, through their acts alleged herein, Defendants specifically intended to and did cause unlawful and artificial prices of COMEX gold futures and silver futures contracts, and NYMEX platinum and palladium futures contracts, in violation of the CEA, 7 U.S.C. § 1, *et seq*.

53. Defendants manipulated the price of a commodity in interstate commerce for future delivery on or subject to the rules of any registered entity, in violation of the CEA.

54. During the Class Period, the prices of COMEX gold and silver futures contracts, NYMEX platinum and palladium futures contracts, and options on those futures contracts did not result from the legitimate market information and the forces of supply and demand. Instead, the prices of COMEX gold and silver futures contracts, NYMEX platinum and palladium futures contracts, and options on those futures contracts, were artificially inflated, or deflated, by the Defendants' spoofing and other manipulative trading activities.

55. Throughout the Class Period, the Defendants entered large orders to buy or sell without the intention of having those orders fulfilled, and specifically, intending to cancel those orders prior to execution. The Defendants did this with the intent to disseminate false information about supply and demand into the market place, and to artificially move prices up or down to suit the Defendants' own trades and positions. As a result of these artificial prices, Plaintiffs and the Class suffered losses on their trades in COMEX gold and silver futures contracts, NYMEX platinum and palladium futures contracts, and options on those futures contracts.

56. Through their use of spoofing and other manipulative techniques, Defendants unlawfully and fraudulently manipulated the prices of COMEX gold futures and silver futures contracts, NYMEX platinum and palladium futures contracts, and options on those futures contracts, throughout the Class Period and thereby damaged Plaintiffs and Class members who purchased or sold at these artificially inflated or deflated prices.

57. At all times and in all circumstances previously alleged herein, Defendants had the ability to cause and did cause gold and silver futures contracts, NYMEX platinum and palladium futures contracts, and options on those futures contracts, to trade at artificially inflated

or deflated prices and were aware of the effects of spoofing and other manipulative conduct on those markets.

58. Defendants used their ability to place buy or sell orders on NYMEX and COMEX and then cancel those orders to enrich themselves and cause losses to Plaintiffs and the Class.

59. Throughout the Class Period, each Defendant violated Sections 6(c), 6(d), 9(a), and 22(a) of the CEA, 7 U.S.C. §§ 9, 13b, 13(a), and 25(a) by their conspiracy to effect the precious metals futures exchanges.

60. As a result of Defendants' unlawful conduct, Plaintiffs and Class Members suffered damages and injury-in-fact due to the creation of artificially inflated or deflated prices for COMEX gold and silver futures contracts, NYMEX platinum and palladium contracts, and options on those futures contracts, to which Plaintiffs and Class Members would not have been subject to but for the unlawful conduct of the Defendants as alleged herein.

61. Plaintiffs and the Class are each entitled to actual damages sustained.

**SECOND CLAIM FOR RELIEF**
**Employing a Manipulative and Deceptive Device In Violation of the CEA**
**7 U.S.C. §§ 1, *et seq*. and Regulation 180.1(a)**
**(As Against All Defendants)**

62. Plaintiffs re-allege and incorporate the preceding allegations with the same force and effect as if fully restated herein.

63. Defendants intentionally employed manipulative and deceptive devices to contrive artificial prices on precious metals futures contracts. As such, each Defendant violated the statutory and regulatory provisions of Sections 6(c)(1) and 9(a)(2) of the CEA, 7 U.S.C. §§ 9(1), 13(a)(2), and Commodities Futures Trading Commission Rule 180.1, 17 C.F.R. § 180.1.

64. Defendants transmitted orders via interstate commerce to market participants in several states in violation of the CEA.

65. As alleged herein, Defendants acted intentionally, or at least recklessly, in employing the manipulative and deceptive device to procure ill-gotten trading profits at the expense of Plaintiffs and the Class.

66. As a result of Defendants' unlawful conduct, Plaintiffs and Class members suffered damages and injury-in-fact due to artificial prices for COMEX gold and silver futures contracts, NYMEX platinum and palladium contracts, and options on those futures contracts, to which Plaintiffs and the Class would not have been subject to but for the unlawful conduct of the Defendants, as alleged herein.

67. Plaintiffs and Class members are each entitled to damages for the violations of the CEA alleged herein.

### THIRD CLAIM FOR RELIEF
### Principal-Agent Liability for Violation of the CEA
### 7 U.S.C. §§ 1, *et seq*.
### (As Against JPM)

68. Plaintiffs re-allege and incorporate the preceding allegations with the same force and effect as if fully restated herein.

69. Under CEA Section 2(a)(1)(B), an act or omission of an employee acting within the scope of employment is deemed to be an act by the employer. An employer is liable for an employee's violations of the CEA to the same extent as that employee. 7 U.S.C. §§ 2(a)(1)(B), 13c(b).

70. Throughout the Class Period, Edmonds, Nowak, Gottlieb and Does 1-18 were employees acting within the scope of their employment with JPM.

71. Plaintiffs and Class members seek the relief they are entitled to under Section 22 of the CEA: an award of damages from JPM for the harm suffered as a result of Defendants' misconduct. 7 U.S.C. § 25(a).

**FOURTH CLAIM FOR RELIEF**
**Aiding and Abetting in Violation of the CEA**
**7 U.S.C. §§ 1, *et seq*.**
**(As Against All Defendants)**

72. Plaintiffs re-allege and incorporate the preceding allegations with the same force and effect as if fully restated herein.

73. Under Sections 13(a) and 22(a)(1) of the CEA, each Defendant is liable for knowingly aiding, abetting, counselling, inducing, or procuring the alleged misconduct described herein. 7 U.S.C. §§ 13c(a), 25(a)(1).

74. As a result of Defendants' aiding and abetting misconduct, Plaintiffs and the Class are entitled to actual damages under Section 22 of the CEA. 7 U.S.C. §§ 25(a).

**FIFTH CLAIM FOR RELIEF**
**Engaging in Deceptive Acts and Practices**
**N.Y. Gen. Bus. Law § 349**
**(As Against All Defendants)**

75. Plaintiffs re-allege and incorporate the preceding allegations with the same force and effect as if fully restated herein.

76. Defendants' unlawful spoofing scheme was directed and caused injury to consumers of commodity futures contracts and options. Defendants' scheme harmed the public interest by depriving consumers of commodity futures contracts and options of the opportunity to participate in a lawful and honest marketplace.

77. Defendants' spoofing scheme originated and relied on transactions initiated in the State of New York.

78. Defendants' spoofing scheme involved deceptive acts or practices that violate Section 349 of New York's General Business Law. Defendants' scheme aimed to inject into the public markets materially false and misleading information concerning the pricing of COMEX

gold and silver futures contracts, NYMEX platinum and palladium contracts, and options on those futures contracts.

79. As a direct and proximate result of the materially false and misleading information Defendants introduced into the market, Plaintiffs and Class members suffered harm. Under Section 349(h) of New York's General Business Law, Plaintiffs and Class members are entitled to their actual damages, as well as reasonable attorneys' fees.

80. Additionally, as provided under Section 349(h), because Defendants willfully and knowingly violated the law with their spoofing scheme, Plaintiffs request punitive damages in an amount sufficient to penalize and deter Defendants.

**SIXTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**(As Against All Defendants)**

81. Plaintiffs re-allege and incorporate the preceding allegations with the same force and effect as if fully restated herein.

82. At the all relevant times in which Defendants executed their illegal scheme alleged herein, they transacted in the precious metal commodities market in such a way as to enrich themselves to the detriment of Plaintiffs and the Class.

83. The Defendants' scheme had no legitimate justification or purpose. Defendants' scheme was designed and employed for the sole purpose of illicitly reaping benefits for themselves. Defendants designed and employed the scheme knowing that it would financially harm Plaintiffs and Class members.

84. Each Defendant unjustly and inequitably benefited from artificial pricing of COMEX gold and silver futures contracts, NYMEX platinum and palladium futures contracts,

and options on those futures contracts.  Therefore, in equity and good conscience, each Defendant should be required to pay restitution to Plaintiffs and the Class.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court grant the following relief:

A. Certifying this lawsuit as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, designating Plaintiffs as the Class representatives, and appointing their counsel as Class counsel;

B. Awarding Plaintiffs and the Class damages against Defendants for their violations of the CEA and state law deceptive practices prohibitions, together with prejudgment interest at the maximum rate allowable by law;

C. Awarding Plaintiffs and the Class restitution of any and all sums of Defendants' unjust enrichment;

D. Awarding Plaintiffs and the Class their costs of suit, including reasonable attorneys' and experts' fees and expenses; and

E. Awarding such other relief as the Court deems just and proper under the circumstances.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby request a trial by jury for all issues so triable.

Dated: December 12, 2018            Respectfully submitted,

**WEISSLAW LLP**

By: *s/ Mark D. Smilow*
    Mark D. Smilow
1500 Broadway, Suite 1601
New York, NY 10036
Telephone: (212) 682-3025
Facsimile: (212) 682-3010
msmilow@weisslawllp.com

*Attorneys for Plaintiffs*